**Ninfa Perez ORTIZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1508–89.**

Court of Criminal Appeals of Texas, En Banc.

June 17, 1992.

Brian W. Wice, Houston, for appellant.

Michael J. Guarino, Dist. Atty., and Thomas Rodriguez, Asst. Dist. Atty., Galveston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the offense of attempted murder. The jury rejected her application for probation and assessed punishment at confinement for eight years in the penitentiary.[1] The First Court of Appeals reversed the conviction and remanded for a new punishment proceeding, holding that the trial court erred in admitting testimony from a psychiatrist at the punishment phase of trial that appellant would not make a "suitable" candidate for probation. *Ortiz v. State*, 781 S.W.2d 399 (Tex. App.—Houston [1st] 1989). We granted the State's petition for discretionary review

in order to review this decision. Tex. R.App.Pro., Rule 200(c)(2).[2]

### I.

In brief, the State's evidence shows appellant persuaded her boyfriend, Wayne Messinger, a dispatcher for the Galveston Police Department, to kill her ex-husband, Richard Ortiz, with whom she was again living. At appellant's instigation, Messinger obtained a .22 caliber pistol with a silencer. On June 14, 1985, appellant left the door to her and Ortiz' home unlocked so that Messinger could gain entry. When Ortiz arrived home from work shortly before 4:00 p.m., Messinger shot him seven times, severely wounding but not killing him. A few days later appellant confessed to her part in the crime.[3]

Appellant offered the testimony of Dr. Toby Myers, a psychotherapist, to the effect that appellant was, at least by her own description of the circumstances of her marriage, a victim of battered wife syndrome. When the State objected to this testimony, appellant called the trial court's attention to this Court's opinion in *Fielder v. State*, 756 S.W.2d 309 (Tex.Cr.App.1988). After an in camera hearing not made a part of the record, the State abandoned its objection, and Dr. Myers was allowed to testify.[4]

At the punishment phase of trial appellant called seven witnesses, including family, friends and co-workers. Even her exhusband, Richard Ortiz, the victim of the offense, testified in her behalf. Each wit-

---

**1.** The jury also returned an affirmative finding as to the use of a deadly weapon. The court of appeals reformed the judgment to delete this finding. Propriety of the decision to reform the judgment is not before us in this petition.

**2.** We also granted appellant's petition for discretionary review to decide whether the court of appeals erred in remanding the cause for a new punishment hearing only. In view of our disposition of the State's petition, we need not address that question. Consequently we dismiss appellant's petition. Tex.R.App.Pro., Rule 202(k).

**3.** For a more complete recitation of facts see *Ortiz v. State*, supra, at 400–401.

**4.** It occurs to us that the State may too readily have relented. In *Fielder*, supra, at 318–19, we held testimony of the psychological effect of marital abuse to be relevant to the defendant's claim of self-defense, inasmuch as it could inform the jury's decision as to the reasonableness of her belief that deadly force was immediately necessary to protect herself. See V.T.C.A. Penal Code, §§ 9.31 & 9.32. In this cause appellant was guilty, if at all, only as a party to the conduct of Messinger. Neither the evidence nor the jury charge authorized conviction on any other theory. Moreover, the evidence did not raise an inference that Messinger acted in self-defense. *Fielder* therefore does not support admissibility of battered wife syndrome testimony on the particular facts of this case.

ness testified "that she would be a good candidate for probation" and "that she would follow the terms and conditions of probation." Appellant herself testified, establishing her eligibility for probation and asking the jury to recommend it. She expressly averred that she could follow the terms and conditions of probation; specifically, *inter alia*, that she could avoid future violations of the law.

In rebuttal the State offered testimony from Dr. Edward Gripon, a psychiatrist. Gripon testified he is a contract consultant with the Jefferson County Probation Department:

> "... I evaluate juveniles and adults whom the probation officers or the judges or whoever places them on probation tend to have some concern about, regarding some type of psychological or mental health aspect as to their suitability for probation. I see a lot of people who are not doing well on probation and there's a motion to revoke their probation filed. I evaluate a lot of people who, I guess, a layman could call noncompliant, who are not complying with the requests or demands of their probation. I file reports back on a weekly basis on those people that I see with the Probation Department and with the court."

Asked whether he had "ever had occasion to evaluate a defendant for his potential for future dangerousness[,]" Dr. Gripon answered:

> "Yes Ma'am. That's a question that we're asked. It's a somewhat controversial question, I recognize, but psychiatrists are called into court not infrequently—most commonly, I suppose, in the punishment phase of trial—and are not infrequently asked questions either in the form of a hypothetical, or if they happen to have interviewed or seen that particular defendant, then they are asked questions about the likelihood or the potential for that person committing a sim-

ilar act or being dangerous in the future."

Gripon then enumerated his criteria for determining "whether a person would be a suitable candidate for probation[,]" *viz:*

> "Seriousness of the offense, prior record of a similar offense or other offenses, emotional makeup of the individual. You could consider the nature of the offense as to the time frame involved and other factors that might have created those circumstances; impulse versus something that was premeditated or planned or whatever; the support system of the individual; likelihood of the victim, if it's a victim, and the individual being put back together or being back in the same type of circumstances again—that sort of thing."

Applying these criteria to his knowledge of appellant gleaned from her confession, the police offense reports, and reports from Dr. Myers and another psychologist,[5] Gripon concluded appellant was "an unsuitable or poor candidate for probation." Because of the long and tempestuous history between appellant and her ex-husband, and given that appellant had had other ready options by which to escape the relationship short of the extremity she chose,[6] Gripon believed that "[h]istory could repeat itself again, and probation might not necessarily be the best approach to that."

Gripon also testified he had worked with abused women. He spelled out what he understood from the literature to be the criteria for diagnosing marital abuse, and opined that appellant did not meet those criteria. He expressly disagreed with Dr. Myers' evaluation in this respect.

The court of appeals held that admission of expert testimony such as Gripon's precipitates a "battle of experts," something this Court has indicated in certain contexts tends to confuse more than facilitate understanding of punishment issues before the jury. E.g., *Schulz v. State*, 446 S.W.2d

---

**5.** See note 9, *post.*

**6.** Evidence at the guilt/innocence phase of trial shows that on an earlier occasion appellant and Messinger had made another attempt on Ortiz' life. On February 2, 1985, appellant lured Ortiz to a mall parking lot. There he was shot in the head, apparently from a distance, but not badly injured. In the course of her confession, appellant indicates Messinger had shot Ortiz with a rifle and scope, at her request.

872 (Tex.Cr.App.1969); *Logan v. State,* 455 S.W.2d 267 (Tex.Cr.App.1970); *Hopkins v. State,* 480 S.W.2d 212 (Tex.Cr.App.1972); *Brown v. State,* 741 S.W.2d 453 (Tex.Cr.App.1987). Accordingly, the court held that the trial court erred in failing to exclude the testimony as overly prejudicial, pursuant to the balancing called for by Tex.R.Cr.Evid., Rule 403. 781 S.W.2d at 403. We granted the State's petition for discretionary review to examine the interplay between Tex.R.Cr.Evid., Rules 401 & 402, Rule 403, Rule 702, and previous caselaw pertaining to exclusion of evidence so as to avoid the so-called "battle of the experts."

## II.

### A. Rules 401 & 402

■ The court of appeals seems to have assumed that Dr. Gripon's testimony was relevant. Such a holding is implicit in a finding under Rule 403 that probative value is substantially outweighed by unfair prejudice, confusion of the issues, etc. Elsewhere we have pointed out that the concept of "relevance" is problematical at the punishment phase of trial because the issue—what punishment to impose within the statutorily prescribed range—is so broadly drawn. *Murphy v. State,* 777 S.W.2d 44, at 62–63 (Tex.Cr.App.1989) (Opinion on State's motion for rehearing). We effectively held in *Murphy* that "suitability" for probation is *not* an issue, and that evidence going to prove an applicant for probation "suitable" is objectionable. *Id.,* at 64–67.[7] Nevertheless, we have held,

a party may open the door to evidence of, *inter alia,* probation "suitability" by proffering evidence that broaches the subject, and the opponent, at his option, may either object, in which case the proffered evidence should be excluded, or present evidence in rebuttal. *Id.,* at 67–68; *Griffin v. State,* 787 S.W.2d 63 (Tex.Cr.App.1990), and cases cited at 67. Appellant directly raised the issue whether she could abide by the terms and conditions of probation, particularly her ability to follow the law. To this extent she tendered her "suitability" for probation as an issue at the punishment phase. Rather than object, the State chose to rebut. Dr. Gripon's testimony was clearly relevant to appellant's likely ability to follow the law in the future.

Furthermore, because all evidence from the guilt phase of trial was resubmitted at punishment, *sans* objection, testimony from Dr. Myers that appellant fit the profile for battered wife syndrome was before the jury at that stage as well, admissible for whatever mitigating impact it may have as a circumstance of the offender.[8] *Murphy v. State,* supra at 63–64. To the extent it contradicted Dr. Myers' conclusions, Dr. Gripon's testimony that appellant was not such a victim also had a bearing on the punishment to the extent it may have deflated that mitigating impact. For these reasons we agree with the court of appeals' tacit assumption that Dr. Gripon's testimony was "relevant." Rule 401, supra. It is therefore admissible, except as otherwise provided by, *inter alia,* statute or rule. Rule 402, supra.[9]

---

7. This cause was tried in January of 1987, prior to the 1989 amendment to Article 37.07, § 3(a), V.A.C.C.P., the provision we construed in *Murphy.* See Acts 1989, 71st Leg., ch. 785, p. 3492, § 4.04, eff. September 1, 1989. We do not here address the question whether "suitability" for probation is an issue under the current incarceration of the statute.

8. Indeed, this testimony was more "relevant" at the punishment phase of trial than at the guilt phase. See note 4, *ante.*

9. Under previous caselaw it was said that expert testimony was of questionable "relevance" if not "based upon facts either proved or assumed." See *Holloway v. State,* 613 S.W.2d 497, at 502 (Tex.Cr.App.1981). This was in fact the only

specific objection leveled against Dr. Gripon's testimony at the trial level in this cause—that his expert opinion was founded upon sources outside the record and thus beyond the reach of crossexamination. The court of appeals nevertheless reversed the conviction not on the basis of *Holloway,* but upon the rationale that Gripon's testimony was inadmissible under Rule 403, supra. However, the State failed to complain until its petition for discretionary review that the objection raised on direct appeal does not comport with appellant's trial objection. We therefore reach the substance of the court of appeals' holding. In any event, the rule of *Holloway* has apparently been "liberalized." See Goode, Wellborn & Sharlot, Texas Rules of Evi-

## B. Rules 702 and 403

■ The Rules of Criminal Evidence favor the admission of relevant expert testimony, just as they favor admissibility of any evidence that is deemed relevant under Rule 401, supra. See generally *Montgomery v. State*, 810 S.W.2d 372 (Tex.Cr.App. 1991) (Opinion on rehearing on Court's own motion). However,

> "... all such testimony need not be admitted. A judicious application of the Rule 702 helpfulness standard and Rule 403 balancing factors is necessary. * * * Such determinations must necessarily be resolved on a case-by-case basis, as they will depend on factors such as the content of the testimony, the context in which it is offered, and the state of the evidence. The admissibility of expert testimony is thus for the court to decide as a preliminary question under Rule 104(a). The court's decision should be overturned only for an abuse of discretion." [10]

Goode, Wellborn & Sharlot, Texas Rules of Evidence: Civil and Criminal § 702.2 (1988), at 500–501.

As we read it, the court of appeals opinion in this cause holds that psychiatric testimony admitted as relevant to the issue whether an accused may be a suitable candidate for probation will be more prejudicial than probative *as a matter of law.* Such a holding effectively removes the trial judge from the Rule 403 calculation, requiring him to exclude all such testimony regardless of the circumstances of the particular case. To this extent, the court of appeals erred.

It is true that in *Hopkins v. State*, supra, we held that expert psychiatric testimony as to the credibility of another witness in the case is impermissible. Put to this particular use, we held, psychiatric testimony is more likely to confuse than enlighten a jury. Thus we effectively held that "psychiatric testimony for impeachment" will invariably prove more prejudicial than probative, at least as a matter of pre-Rules law. 480 S.W.2d at 220. The holding in *Hopkins* is no broader than its facts, however. In other contexts we have readily held relevant psychiatric testimony admissible without inquiry into whether as a matter of law it might prove more prejudicial, confusing, etc., than probative. We have long held, for example, even before the new Rules of Evidence, that psychiatric testimony may be admitted in a capital case when in its discretion the trial court deems it informative on the issue of future dangerousness. E.g., *Moore v. State*, 542 S.W.2d 664, at 675–76 (Tex.Cr.App.1976). Even assuming the holding in *Hopkins* would survive the new Rules, we do not regard it as dispositive of the instant case.

Nor do we believe that *Schulz v. State, Logan v. State*, or *Brown v. State*, all supra, control. In *Schulz* the Court held that the trial court had not erred in excluding psychiatric testimony that probation "would be better" for the accused because such testimony was an "invasion of the province of the jury." In *Logan* the Court held it was not error to exclude testimony that the purpose of probation was rehabilitation and "that when a person had a clean record there was possibly a good chance to rehabilitate[.]" 455 S.W.2d at 270. We simply cited *Schulz*, without further expli-

dence: Civil and Criminal §§ 703.1 & 703.3 (1988), at 512 & 515.

**10.** Tex.R.Cr.Evid., Rule 702 reads:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Tex.R.Cr.Evid., Rule 403 reads:

"Although relevant, evidence may be excluded if its probative value is substantially out-

weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

Tex.R.Cr.Evid., Rule 104(a) reads, in pertinent part:

"Preliminary questions concerning the qualifications of person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court...."

cation. Even if the *Schulz* rationale for excluding psychiatric testimony had not been later repudiated in *Hopkins* itself, however, that it "invades the province of the jury" is no longer a valid objection to opinion testimony in light of Tex.R.Cr. Evid., Rule 704.[11] See *Duckett v. State*, 797 S.W.2d 906, at 915, n. 13 (Tex.Cr.App. 1990).

In *Brown*, another pre-Rules case, we held the trial court did not err in excluding testimony from a probation officer describing terms and conditions of probation, alcohol and drug rehabilitation programs available to a probationer, and an intensive supervision program to which the accused could be admitted. The Court reasoned, *inter alia:*

> "To admit this testimony would make it logically consistent to admit testimony offered by the State concerning the administrative procedures and rehabilitative programs practiced by the Texas Department of Corrections. The logical and inevitable result of this would be to allow an escalating 'battle of the experts' to develop during the punishment phase of trial. Whatever probative value this testimony would have is far outweighed by the danger that it would prejudice or confuse the trier of fact."

We construe *Brown* to hold that testimony relevant to the trappings of probation *may* be excluded, within the trial court's discretion, where it might precipitate a distracting inquiry into the relative merits of probation versus incarceration. This is a far cry from holding that psychiatric testimony focusing on so-called suitability for probation, where that has been made an issue in the punishment phase of the case, will *invariably* be more confusing or prejudicial than probative, *as a matter of law.*

In fact, *Schulz*, *Logan* and *Brown* all held that the record supported the trial court's exercise of discretion to *exclude* psychiatric testimony relevant to probation.

None holds that the trial court has no discretion to *admit* such testimony, should it find it is helpful to the jury, and that its probative value was not substantially outweighed by unfair prejudice or confusion of the issues. Questions of admissibility under Rules 702 and 403 are for the trial court in the first instance. Rule 104(a), supra. The appellate perspective is principally one of deference, a necessary attitude if we are "to avoid the anomaly of having appellate courts usurp a function that the system assigns to the trial courts." *Montgomery v. State*, supra, at 392. So long as the record provides a rational basis to support the trial court's judgment, pursuant to Rule 702, that expert testimony will assist the jury (or its judgment that it will *not*), under the standard articulated in, e.g., *Pierce v. State*, 777 S.W.2d 399, at 414 (Tex.Cr.App.1989), the appellate court cannot conclude *de novo* that the evidence is admissible (or inadmissible). Nor should appellate courts conduct a *de novo* review of the trial court's decision that expert testimony is inadmissible (or admissible) because it will only, (or because it will not), e.g., confuse the issues under Rule 403. *Montgomery*, supra. In short, under the Rules of Criminal Evidence, whether a "battle of experts" will more likely perplex than assist a jury is a case-specific inquiry, to be conducted at the trial level and measured on appeal only for abuse of discretion.

■ We hold that the court of appeals erred in failing to measure the trial court's decision to admit Dr. Gripon's testimony, both as to appellant's ability to follow the terms and conditions of probation, and as to whether she fit the profile for battered wife syndrome, against an abuse of discretion standard. Accordingly, we vacate the judgment of the court of appeals and remand the cause to that court for further consideration and disposition not inconsistent with this opinion.[12]

---

11. Rule 704 reads:

> "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

12. The court of appeals may well find it anomalous to measure the trial court's discretion here for abuse under Rules 702 and 403, supra, in view of the fact that the trial court was not called upon to exercise discretion with regard to these rules. See note 9, *ante.* The court of

MILLER, CAMPBELL and BENAVIDES, JJ., join Part IIB and concur in the result.

MALONEY, J., concurs in the result.

BAIRD, J., dissents.

OVERSTREET, Justice, concurring in part and dissenting in part.

As the plurality details, we granted a single ground for review from each of the State's and appellant's petitions. The State's ground questions the First Court of Appeals' ruling regarding the admissibility of psychiatric testimony at punishment to rebut appellant's contention that she was a suitable candidate for probation. Appellant's ground contends that the court of appeals' remanding for a new trial solely on the issue of punishment violates the ex post facto clause of the United States Constitution. I agree with the result of the plurality's disposition of appellant's ground, but disagree with the disposition on the State's ground.

Appellant's ex post facto claim has recently been addressed and decided adversely to his position. *See Grimes v. State,* 807 S.W.2d 582 (Tex.Cr.App.1991). Therefore that ground should be overruled. Because the plurality's dismissal thereof has the same effect, I concur with said action. See page 344, note 2. However, I disagree with the plurality's disposition on the State's ground.

As the plurality describes, at punishment seven witnesses, including the complainant himself, testified for appellant. They each testified without objection by responding affirmatively when asked if they felt that appellant would be a good candidate for probation and would or could follow the rules of probation. Over objection appellant requested that the jury "give [her] probation." She then responded affirmatively when asked if she could follow the terms and conditions of probation. Then she was asked specifically about whether she could follow several particular terms

and conditions, such as not committing a felony against the laws of Texas or the United States, avoiding injurious and vicious habits, performing community service, and continuing to work and support her family. She again responded affirmatively to those specific questions.

The State proceeded to call in rebuttal a psychiatric expert. The jury was recessed and the State presented testimony qualifying the psychiatrist as an expert. At that time appellant objected to allowing the psychiatrist to testify before the jury because he had never examined her and was basing his opinions upon hearsay, and upon reviewing a presentence investigation report which was not before the jury and documents of questionable accuracy. The trial court overruled the objection and allowed the psychiatrist to testify before the jury. The psychiatrist then testified in some detail about abused/battered wife/women situations and typical characteristics thereof. He did not feel that appellant fit the typical profile of such an abused/battered woman. He further opined that appellant and the complainant appeared to be involved in a classical love-hate pathological relationship. He finally concluded that in his opinion appellant would not be a suitable candidate for probation. Appellant did not object to the relevancy or prejudicial effect of any of that testimony. At one point when the psychiatrist was first asked about probation suitability, appellant objected solely to the narrative answer.[1] The State then withdrew and rephrased that particular question and the trial court instructed the psychiatrist to not volunteer information in responding. The psychiatrist then further testified, without objection, about his view that appellant was unsuitable for probation. He was even specifically asked "to elaborate on why [he] came to that conclusion" without any objection from appellant.

Though I think that very very rarely, if ever, is an expert's "specialized knowledge" about probation suitability going to

---

appeals is at liberty, upon remand, simply to overrule appellant's point of error on the basis of procedural default.

1. Actually, appellant's "objection" was an interjection of, "Excuse me, your honor. Would he just answer the question instead of giving us a narrative?"

**350**

be particularly useful in assisting the trier of fact to determine a fact in issue per Rule 702 of the Texas Rules of Criminal Evidence, in this instance I believe that appellant "open[ed] the door" to such testimony being admitted into evidence by presenting her witnesses to testify about such as described above. *See* page 346; *Griffin v. State*, 787 S.W.2d 63, 67 (Tex.Cr.App.1990); *Murphy v. State*, 777 S.W.2d 44, 67 (Tex. Cr.App.1988) (Opinion on Rehearing). Thus such evidence was admissible at trial in response to appellant's "open[ing] the door" thereto.

Appellant's point of error below dealing with the psychiatrist's testimony simply challenged said testimony with respect to probation suitability. No mention was made about the abused/battered wife/women testimony.[2] The court of appeals' decision was thus not based upon the admissibility of such testimony. *Ortiz v. State*, 781 S.W.2d 399 (Tex.App.—Houston [1st Dist.] 1989). It simply concluded that the psychiatric testimony about probation suitability was erroneously admitted and that such error was not harmless.[3] *Id.* Thus, there is no decision for this Court to review regarding the admissibility of the abused/battered wife/women testimony.

Therefore the court of appeals' determination that the probation suitability testimony was erroneously admitted should be reversed because the evidence was admissible as a response to appellant opening the door to such. Because the plurality does not do so I respectfully dissent to remanding the cause for further consideration.[4]

---

2. The point of error stated: "The trial court erred in permitting, over defense counsel's objection, state's witness [the psychiatrist] to testify *that the appellant was not a suitable candidate for probation.*" (Emphasis added.) Her argument and authorities discussed such claim without challenging the abused/battered wife/women portion of the psychiatrist's testimony.

3. It specifically held that "it was error for the trial court to permit the State to present an expert to testify that appellant was not a suit-

able candidate for probation" and that "[a]fter reviewing all the evidence, [it] [could] not say that the error was harmless." *Ortiz v. State*, 781 S.W.2d at 403.

4. I also observe that the indictment alleges that the instant offense occurred on or about June 14, 1985. The record also reflects that appellant was convicted and sentenced in February of 1987. Appellant filed a third notice of appeal on May 6, 1987. This cause has been in various stages of appellate orbit ever since.