

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00022-CR

WILLIAM EMMETT LAWSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 42639-B

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

When William Emmett Lawson's elderly parents' health noticeably declined, he moved into their home and became their sole caregiver. After approximately six years of that difficult service, William made the fateful decision to end his own life and that of his father, Robert. William's plan involved locating the two men inside the truck's cab, tying the doors of his truck shut from the inside, and filling the cab with propane gas. When a watchful neighbor noticed William's plan being implemented, firefighters were summoned and broke into the truck. Seeing his goal slipping away, William attempted to strangle Robert before firefighters could get to the men. Both men survived the ordeal. Rather than prosecute William for attempted murder, the State charged him with aggravated kidnapping, admittedly to maximize the possible sentence under these facts.

William pled guilty to the offense, and the jury assessed his sentence at nine years' confinement, a sentence imposed by the trial court. On appeal, William contends his trial counsel was ineffective in four respects. Because allegations of ineffective assistance of counsel were not proven, we affirm the trial court's judgment.

The Sixth Amendment to the United States Constitution grants an accused the right to have the assistance of counsel for his or her defense, a right that has been interpreted to require the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The right to effective assistance of counsel does not mean, however, that counsel must be errorless or perfect. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). A conviction

resulting from ineffective assistance of counsel is constitutionally infirm. *Strickland*, 466 U.S. at 688.

To prevail on his ineffective assistance claim, William must prove by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness and that it is reasonably probable that the outcome of the proceeding would have been different, but for counsel's unprofessional errors. *See id.* at 686; *Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009). Ineffective assistance of counsel claims must be firmly rooted in the record, with the record itself affirmatively demonstrating the alleged ineffectiveness. *Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006). Thus, we need not examine both *Strickland* prongs if one prong cannot be met. *Strickland*, 466 U.S. at 697.

We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance and was motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002). Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing an evaluation of the merits of ineffective assistance claims. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "In the majority of

3

instances, the record on direct appeal is simply undeveloped and cannot adequately reflect" the reasoning of trial counsel. *Id*. at 813–14. Only in the rare case "in which trial counsel's ineffectiveness is apparent from the record" may the appellate court "address and dispose of the claim on direct appeal." *Lopez*, 343 S.W.3d at 143.

William claims that his trial counsel was ineffective because counsel failed to preserve error when the State, in opening statements, told the jury this was a murder case; counsel failed to object to testimony from his sister that William should be incarcerated; counsel failed to object when the State told the jury in closing arguments that William would track down and kill Robert if William was given community supervision; and counsel failed to preserve error when the State misstated the evidence during William's cross-examination.

We affirm the judgment of the trial court, because ineffective assistance of counsel has not been established regarding trial counsel's handling of (1) the State's opening-statement mischaracterization of the case as a murder case, (2) the sister's testimony that William should be incarcerated, (3) the State's closing-argument suggestion that William might try again to kill Robert if given community supervision, or (4) the State's misstatement of evidence during its cross-examination of William.

*(1)     The State's Opening-Statement Mischaracterization of the Case as a Murder Case*

William's initial complaint stems from the State's opening remarks to the jury, in which the State characterized the case against him as one for murder. The prosecutor told the jury,

> I don't want you to make any bones about it, and I don't want you to be confused about what this case is. Mr. William Lawson is a murderer. And but for the brave members of the . . . Kilgore Police Department and Kilgore Fire Department, Robert Lawson would be dead today.

4

. . . .

> You may be wondering, if this is a murder, if this -- he tried to kill him; why are we here on aggravated kidnapping? And it's very simple. Aggravated kidnapping is a first-degree felony, it's five years to life in prison. It's the highest punishment range we have other than capital murder. It is the most akin to murder that we have in this charge. Attempted murder is two years to twenty years in prison, it's a second-degree felony. We wanted to give you that full range of punishment and we wanted to say, "This man is dangerous." And that's why you have a first-degree felony that you're looking at today. But don't be confused; it's a murder case.

Counsel for William then objected "to the characterization of this case as a murder case. The defendant's pled 'guilty' to the offense of aggravated kidnapping." The trial court sustained the objection "for purposes of opening statement and what the State intends to prove . . . ."

William contends trial counsel was ineffective because counsel failed to preserve for appeal any error with respect to the State's inaccurate characterization of this case as one for murder.[1] But William did object to the State's characterization, as previously recounted. William claims, however, that counsel's failure to preserve error occurred in connection with the lack of a request for a limiting instruction and in the failure to move for a mistrial.

Counsel's failure to seek an instruction to disregard the State's comments may have been made for strategic reasons. His objection had just been sustained. Counsel may have decided

---

[1]William also apparently suggests that counsel's failure to object to "possible prosecutorial misconduct" by the State for indicting and trying him for aggravated kidnapping in order to obtain a greater punishment range was ineffective assistance of counsel. In his brief, William simply contends, "Appellant's counsel did not make any objection regarding possible prosecutorial misconduct in this matter; nothing is preserved for a basis of appeal in that regard." To the extent William intended to raise the failure to object to prosecutorial misconduct as a point of error on appeal, we find that it has been inadequately briefed. Rule 38.1(h) of the Texas Rules of Appellate Procedure requires that a brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). An inadequately briefed issue may be waived on appeal. *McCarthy v. State*, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001); *see Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008) (affirming that court has no obligation "to construct and compose" a party's "issues, facts, and arguments 'with appropriate citations to authorities and to the record'").

5

not to draw further attention to the State's characterization of this case as one for murder. Absent a record revealing the reasons for counsel's decision not to seek an instruction to disregard, we will not second guess counsel's trial strategy through hindsight.

The need for a mistrial in any situation is evaluated based on three factors: (1) the severity of the misconduct involved, (2) the efficacy of any instruction by the trial court to remedy the effect of the event on the jury, and (3) the certainty of a conviction without the misconduct. *Archie v. State*, 340 S.W.3d 734, 738–39 (Tex. Crim. App. 2011) (citing *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)). Here, none of the three factors has been developed or explained. It does not appear to us that the argument is "so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against" William. *See Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004). If counsel had sought a mistrial, it would likely have been denied, further calling the jury's attention to the State's comment.

William has failed to show that his counsel's performance was deficient with respect to this complaint of ineffective assistance.

*(2)     The Sister's Testimony that William Should Be Incarcerated*

William next contends that counsel was ineffective in failing to object to the testimony of his sister, Elizabeth Warren,

> Q.     And what are -- I just have to ask you: What are your beliefs, what would you like to see happen to William Lawson because of what he did to your dad?
>
> A.     As much as it pains me and it hurts my -- it just hurts to have to say it, I think he needs jail time. I am in fear that another attempt would be made

6

on my father's life, because he firmly believes that he does not deserve to live. And he believes that. My -- and my father and -- and I and Brad are all afraid that -- we would -- we would just be afraid for his life.

William contends the excerpted testimony was inadmissible. "[T]he wishes of the victim's family members as to the defendant's fate fall beyond the parameters of victim-impact evidence and are not admissible." *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). Victim-impact evidence is evidence "concerning the effect that the victim's death will have on others, particularly the victim's family members." *Mathis v. State*, 67 S.W.3d 918, 928 (Tex. Crim. App. 2002) (quoting *Mosley*, 983 S.W.2d at 261).

This case does not involve victim-impact evidence. The testimony at issue was elicited during the punishment phase of a non-capital trial. "The admissibility of evidence during 'the punishment phase of a non-capital trial is a function of policy rather than a question of logical relevance.'" *Ellison v. State*, 201 S.W.3d 714, 719 (Tex. Crim. App. 2006) (quoting *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002)). In the past, Texas courts have held that a defendant's suitability for probation or his or her ability to abide by the terms and conditions of probation are not issues in the punishment phase of trial. *Ortiz v. State*, 834 S.W.2d 343, 346 (Tex. Crim. App. 1992), *superseded by statute*, Acts of Sept. 1, 1993, 73d Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3586, 3759, *as recognized in Ellison v. State*, 201 S.W.3d 714, 721–22 (Tex. Crim. App. 2006); *see Hardin v. State*, 20 S.W.3d 84, 90 (Tex. App.—Texarkana 2000, pet. ref'd).

In *Ellison*, however, the high criminal court held that, pursuant to Article 37.07, Section 3(a) of the Texas Code of Criminal Procedure, "suitability is a matter 'relevant to

7

sentencing.'. . . when a defendant seeks community supervision." *Ellison*, 201 S.W.3d at 722 (quoting TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2014)).[2] Further, "a probation officer may give an opinion on a defendant's suitability for probation," not only as an expert witness, but also as a lay witness based on his or her personal knowledge and perceptions of the defendant. *Id.* at 722–23.

Here, trial counsel did not object to testimony from a witness who had known William his entire life and who testified that because William believed Robert did not deserve to live, Robert's life would be endangered if William was not given "jail time." Counsel could have chosen not to object to Warren's testimony, as such testimony was seemingly based on her personal knowledge and perceptions of William. Even assuming this evidence was not admissible, counsel may have failed to object for strategic reasons. Counsel subsequently introduced the testimony of William's daughter, Debbie Wheelis. Wheelis testified that she wanted her father to receive probation,

> Q.      And you understand that -- I mean, obviously you understand that what he's pled "guilty" to is a -- is a first degree felony offense in Texas and he could face, you know, up to a very long prison sentence -- from anywhere from probation up to a very long prison sentence?
>
> A.      Yes, I do.
>
> Q.      Is it your desire that he be granted probation in this case?
>
> A.      It is.

---

[2]Article 37.07 of the Texas Code of Criminal Procedure governs evidence at the punishment phases and provides that "evidence may be offered by the State and the defendant as to any matter the court deems relevant to sentencing." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1).

Q. Do you have any concerns whatsoever about him being involved in the caretaking of your one-year-old?

A. No. My father is the most loving, honest person that I know. And I know, aside from this, he's always taken care of me, he's always taken care of my family and extended family.

Counsel could have chosen not to object to Warren's testimony so as not to foreclose the opportunity to offer similar testimony—albeit from a different perspective—from Wheelis. Since it is conceivable that counsel used this strategy, we will not second guess it through hindsight. William has failed to establish that his attorney was deficient in this regard.

*(3) The State's Closing-Argument Suggestion that William Might Try again To Kill Robert if Given Community Supervision*

William next contends that counsel was ineffective in failing to object when the State argued in closing that William would track down and kill Robert if William was given community supervision. William claims there can be no strategy for this failing on the part of trial counsel, but fails to analyze this point of error. In the interests of justice, we will address it.

Though the State did not exactly argue what William claims, it did argue,

> If you put Mr. Lawson on probation, which is a scary thought, you're basically giving him a license to kill . . . I tell you who thinks he is going to hunt those people down, are the people who have grown up with William, people who have dealt with William on a daily basis. His sister Elizabeth and his brother Bradley . . . .

As previously discussed, we cannot conclude that counsel was ineffective in choosing not to object to Warren's testimony.[3] William ostensibly claims his counsel was ineffective in failing

---

[3]Although counsel for William objected on the basis that there was no testimony from Bradley as argued by the State, no objection was interposed to the substance of the argument.

9

to object to what he believes was improper jury argument. The Texas Court of Criminal Appeals has recognized four proper areas of jury argument: "(1) summation of the evidence presented at trial; (2) reasonable deduction drawn from that evidence; (3) answer to the opposing counsel's argument; or (4) a plea for law enforcement." *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). In this case, the State's argument falls within the parameters of summarizing the evidence presented at trial and drawing reasonable deductions from that evidence. William has failed to demonstrate the deficiency of his attorney in this regard.

*(4)     The State's Misstatement of Evidence During Its Cross-Examination of William*

William's final claim of ineffective assistance is made in connection with his own cross-examination. During William's cross-examination, the State asked,

> And so on May 2nd, 2013, you take your father, you put him in the trunk of your car; you tie up the doors with this rope, so even if he wanted to, he couldn't get out; you take this propane bottle, you put it between the two of you; you tie the tube to the rearview mirror; and you have this lighter?

William's attorney objected, indicating, "Counsel has misstated the testimony. There's been no evidence that he put anyone in the trunk of a car." The State explained that it indeed misspoke: "I thought I said 'truck,' in the truck." The trial court told the jury to "recall what the evidence and the testimony was and was not." William's complaint is centered on the fact that counsel failed to pursue a ruling on his objection. Given the fact that the State conceded that it misspoke and stated that it meant to say "truck" rather than "trunk," counsel's decision not to further emphasize the matter was reasonable trial strategy. William failed to meet the first *Strickland* prong on this issue.

10

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:    January 13, 2015
Date Decided:     February 6, 2015

Do Not Publish