**Jerred J. HUNTER, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–93–426–CR.**

Court of Appeals of Texas, Fort Worth.

March 30, 1995.

---

Anthony D. Lyons, Dallas, for appellant.

Tim Curry, Cr. Dist. Atty., Betty Marshall, Charles M. Mallin, Asst. Chief of Appellate Sec., Danielle A. LeGault, Lisa Mullen, and David Escobar, Asst. Crim. Dist. Attys., Fort Worth, for appellee.

Before DAY, DAUPHINOT and RICHARDS, JJ.

## OPINION

DAY, Justice.

Appellant Jerred J. Hunter brings three points of error challenging a sentence of incarceration for 75 years handed down by a jury after his conviction for the offense of aggravated sexual assault. *See* TEX.PE-NAL CODE ANN. § 22.021 (Vernon 1994). We overrule appellant's points of error and affirm the judgment of the trial court.

## BACKGROUND

Appellant was previously convicted of aggravated sexual assault in connection with an attack on H.W., a sixteen-year-old high school student. His conviction was affirmed by this court in an unpublished opinion, but the Court of Criminal Appeals reversed and remanded for a new trial on punishment in *Grunsfeld v. State*, 843 S.W.2d 521 (Tex. Crim.App.1992). The instant appeal stems solely from the new trial on punishment.

## POINT OF ERROR ONE

Appellant first complains that the trial court erred in permitting the prosecutor to excuse an African–American juror for racial reasons. At the conclusion of voir dire, appellant complained that the State had exercised one of its peremptory challenges against Juror No. 2, Emmett Stevenson, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Appellant says the voir dire questions of African–American panel members were in no way distinctive, nor did they elicit any information that would, on its face, justify the use of a peremptory challenge of the jurors. Appellant says Stevenson indicated that in the absence of any knowledge of the facts or circumstances of the case, he would lean towards the lower end of the punishment range, an answer appellant claims was substantially similar to that of a white juror, Juror No. 3, who was not stricken. Appellant says he established a prima facie case of racial use of a peremptory challenge by the State and that the State failed to meet its burden to provide a racially neutral explanation for the strike.

The State responds that during voir dire, venirepersons Stevenson, Friedman, and Abbe indicated that they thought a life sentence would be too harsh for the offense of aggravated sexual assault. In addition to Stevenson, Friedman and Abbe were peremptorily stricken by the State, which says such responses were particularly troubling given that the trial was solely for the determination of punishment. The State says that at the time appellant raised his *Batson* challenge, the trial court stated it had also noted that Stevenson said he would lean toward the lower end of the punishment range and that while such a response would not make him challengeable for cause, it was considered an adequate, race-neutral reason for the peremptory strike.

The State disputes appellant's claim that Haynes, a white juror, was seated on the panel despite having made the same response to a similar question during voir dire. The State asserts that Haynes' comment that he would have to wait until the evidence was in before determining punishment differed from that of Stevenson, who said "I don't know anything about the facts. I would go to the lower end."

The State says Stevenson was struck because he favored minimal punishment for the offense of aggravated sexual assault and that it was seeking jurors who could impose the maximum sentence, a permissible motive under *Yarbough v. State*, 732 S.W.2d 86, 90 (Tex.App.—Dallas 1987), *rev'd on other grounds*, 761 S.W.2d 17 (Tex.Crim.App.1988). The State cites *Green v. State*, 839 S.W.2d 935, 938–39 (Tex.App.—Waco 1992, pet. ref'd) for the proposition that a strike against a juror who favors the low end of the punishment range is race-neutral. The State claims appellant failed at trial to offer any evidence showing the explanations of the State were a sham or pretext and that appellant failed to cross-examine the prosecutor at trial. It further argues that on appeal, he has not shown anything that would indicate the State's explanations were false or inaccurate and that in such an instance, a defendant will not be permitted on appeal to offer reasons why the explanations were not race-neutral.

■ Because the State offered race-neutral reasons for its strike of Stevenson and the trial court found no purposeful racial discrimination, we do not review whether appellant made a prima facie case of purposeful discrimination based on race. *See Sterling v. State*, 830 S.W.2d 114, 118 (Tex. Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992); *Hill v. State*, 827 S.W.2d 860, 865 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). When race-neutral explanations are offered, the defendant has the burden to persuade the trial court that the challenge is racially motivated in fact. *Lewis v. State*, 815 S.W.2d 560, 563–64 (Tex.Crim. App.1991), *cert. denied*, 503 U.S. 920, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992). The defendant must prove affirmatively that the State's race-neutral explanations were a sham or pretext. *Webb v. State*, 840 S.W.2d 543, 544 (Tex.App.—Dallas 1992, no pet.). That burden is not met by the defendant merely disagreeing with the State's explanations. *Id.*

■ In reviewing the trial court's findings on a *Batson* objection, an appellate court applies the "clearly erroneous" standard of review. *Tennard v. State*, 802 S.W.2d 678, 680 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991). The role of the reviewing court is not to determine whether the prosecutor's explanations are credible, but rather whether the trial court's ruling on the *Batson* objection is supported by the record and therefore not clearly erroneous. *Whitsey v. State*, 796 S.W.2d 707, 726 (Tex.Crim.App.1989) (op. on reh'g). We review the evidence in the light most favorable to the trial court's ruling. *Cantu v. State*, 842 S.W.2d 667, 689 (Tex. Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). The trial court's finding will be disturbed only if the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Hughes v. State*, 850 S.W.2d 260, 267 (Tex.App.—Fort Worth 1993, pet. ref'd).

■ Venirepersons Friedman and Abbe, who indicated that a life prison sentence for

aggravated sexual assault seemed unduly harsh, were stricken from the panel. Thus, we find that the State struck white members of the venire who had responded similarly to Stevenson. Additionally, we distinguish the comments made by Haynes from those made by Stevenson. Haynes indicated that he thought it would be unfair to speculate on what type of sentence he could hand down without knowing any of the facts. Stevenson, in contrast, admitted that he did not know any of the facts in the instant case but nevertheless said he would lean toward the low end of punishment. We find that the trial court's ruling on the *Batson* motion is supported by the record and that no mistake has been committed. Appellant's first point of error is overruled.

## POINTS OF ERROR TWO AND THREE

■ Appellant argues his second and third points of error jointly, asserting that the trial court erred in permitting the State to introduce testimony from a probation officer relating to the operations, rules and regulations of probation and relating to the purpose of probation.

Appellant called to the stand a probation officer for the purpose of establishing that there were programs available to probationers to assist them with counseling to control anger and other problems. After this testimony, the State sought to obtain testimony on the workings of the probation department, the number of people on probation in Tarrant County, and whether a person convicted of the offense for which appellant had been convicted was a good candidate for probation. Appellant argues that these factors arose after the offense and independently of appellant and should have been excluded under *Brown v. State*, 741 S.W.2d 453 (Tex.Crim. App.1987), *Thomas v. State*, 638 S.W.2d 481 (Tex.Crim.App.1982) and *Stiehl v. State*, 585 S.W.2d 716 (Tex.Crim.App. [Panel Op.] 1979), *cert. denied*, 449 U.S. 1114, 101 S.Ct. 926, 66 L.Ed.2d 843 (1981). Appellant says it was error to admit testimony regarding probation supervision and revocation, the purposes of probation and the characteristics that make an applicant a favorable candidate, and that

such error was harmful under Tex.R.App.P. 81(b)(2).

The State responds that appellant first put the terms and conditions of probation at issue and into evidence and that it was allowed to respond in kind. Additionally, the State asserts that given the brutal nature of the case, any error was harmless.

The State notes that appellant presented several witnesses, including his mother, Victoria Moore. After eliciting testimony from Moore that appellant was a very bitter and angry person, appellant asked the following:

[DEFENSE COUNSEL]: If the jury finds it in their hearts to grant [appellant] a probated sentence, would you assist him in each and every way you could to assist him meeting the conditions of probation?

MS. MOORE: Yes, sir.

[DEFENSE COUNSEL]: As you already have exemplified in the past?

MS. MOORE: Yes, sir.

[DEFENSE COUNSEL]: Would you be there for him?

MS. MOORE: Yes, sir.

[DEFENSE COUNSEL]: Now, we've talked about the terms and conditions of probation and we've gone over those?

MS. MOORE: Yes, sir.

[DEFENSE COUNSEL]: And you understand that they cause a great deal of responsibility?

MS. MOORE: Yes, sir.

Additionally, appellant called Joe Gibbs, minister at the Stop Six Church of Christ, to the stand, when the following exchange occurred:

[DEFENSE COUNSEL]: If [appellant] had an opportunity to receive a probated sentence from the jury, would [he] be able to come back to your church?

MR. GIBBS: Yes, he would.

[DEFENSE COUNSEL]: Would he be welcomed at your church?

MR. GIBBS: Yes, he would.

[DEFENSE COUNSEL]: Would you assist [appellant] and his family in spiritual counseling and support—

MR. GIBBS: Yes, sir.

[DEFENSE COUNSEL]:—that he would need if he's released on probation and made a part of that community again?

MR. GIBBS: Yes, sir.

Appellant also called to the stand his uncle, William Anderson, who engaged in the following exchange:

[DEFENSE COUNSEL]: Would you tell the Court what your role in regards to those discussions would be if, in fact, the jury decided to give [appellant] probation for this particular offense?

MR. ANDERSON: Well, as I am his uncle and as such, I would do everything in my power to see that he has some positive influences so he can come and stay with me or after his duration.

Finally, appellant called to the stand the probation officer, who answered affirmatively after being asked by defense counsel whether anger control counseling can be one of the conditions that a trial court could impose on a probationer. The State says that only then did it elicit testimony regarding the number of probationers and probation officers in Tarrant County, the terms and conditions of probation, and whether appellant would be a good risk on probation.

The State asserts that appellant was the first to inject the issue of the terms of probation into the proceeding and that once the door was opened to such evidence, he should not be allowed to complain that the State responded in kind. The State notes that even otherwise inadmissible evidence may be introduced during cross-examination if the defendant has opened the door to that issue and cites *McKee v. State*, 855 S.W.2d 89, 92 (Tex.App.—Houston [14th Dist.] 1993, no pet.) for that argument.

We find the State's reliance on the factually similar *Ortiz v. State*, 834 S.W.2d 343 (Tex.Crim.App.1992) is well-placed. In *Ortiz*, the defendant offered the testimony of seven witnesses, including family and friends, who stated that the defendant would be a good candidate for probation. Only then did the State offer, in rebuttal, the testimony of a psychiatrist for the local probation department to state that, based on a hypothetical constructed out of the facts of the defen-

dant's offense, the defendant would not be a good candidate for probation. *Id.* at 344–45. The *Ortiz* court noted that once this "suitability" testimony was introduced by the defendant, the State could either object, in which case the evidence would have been excluded, or present evidence in rebuttal. *Id.* at 346. We find appellant opened the door to testimony regarding the terms and conditions of probation and his suitability for it. Thus, it was not error for the trial court to permit the State to elicit such testimony. Appellant's second and third points of error are overruled.

The judgment of the trial court is affirmed.