**728-15**

No. PD-0728-15

ORIGINAL

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 27 2015

Abel Acosta, Clerk

----------------

JOSE DIAS PEREZ,
              Appellant/Petitioner

FILED IN
COURT OF CRIMINAL APPEALS

vs.

AUG 27 2015

THE STATE OF TEXAS,
              Appellee/Respondent

Abel Acosta, Clerk

----------------

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

----------------

IN APPEAL NO. 12-14-00116-CR
FROM THE
COURT OF APPEALS
FOR THE
TWELFTH JUDICIAL DISTRICT
TYLER, TEXAS

PRO SE: JOSE DIAS PEREZ
        TDCJ-ID # 1951217
        EASTHAM UNIT
        2665 PRISON ROAD # 1
        LOVELADY, TEXAS 75851

COVER

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ······································· IV

STATEMENT REGARDING ORAL ARGUMENT ·························· 1

STATEMENT OF THE CASE ··································· 1-2

STATEMENT OF PROCEDURAL HISTORY ························· 2

GROUNDS FOR REVIEW ······································ 3

**GROUND FOR REVIEW NO. ONE:**

Whether the Court of Appeals improperly held the Trial Court properly admitted into evidence a personal writing of the Petitioner which was seized upon the execution of an evidentiary search warrant?

**GROUND FOR REVIEW NO. TWO:**

Whether the Court of Appeals improperly held the Trial Court properly admitted into evidence a statement made by the Petitioner to Detective Battley while in custody following defective **Miranda** warnings?

**GROUND FOR REVIEW NO. THREE:**

Whether the Court of Appeals properly held the Trial Court properly admitted into evidence a statement made by the Petitioner to Jailor Creel while in custody without any **Miranda** warnings?

**GROUND FOR REVIEW NO. FOUR:**

Whether the Court of Appeals properly held the Trial Court did not err when it failed to excuse an admittedly bias juror after trial had commenced, and no agreement was made to dismiss juror between the State and Defense counsels?

**GROUND FOR REVIEW NO. FIVE:**

Whether the Court of Appeal properly held evidence was sufficient after overruling Petitioner issues One, Two and Three?

**GROUND FOR REVIEW NO. SIX:**

Whether the Court of Appeals properly held the Trial Court properly determined that an extraneous unadjudicated extraneous offense, over thirty (30) years old, was admissible, and in failing to grant a mistrial when unsolicited testimony of the extraneous offense was presented to the jury?

## TABLE OF CONTENTS CONTINUED

ARGUMENT NUMBER ONE···········································3-5

ARGUMENT NUMBER TWO AND THREE·································5-8

ARGUMENT NUMBER FOUR··········································8-9

ARGUMENT NUMBER FIVE··········································9-10

ARGUMENT NUMBER SIX···········································10-12

PRAYER························································12

CERTIFICATE OF SERVICE········································13

APPENDIX - A, OPINION OF 12th COURT OF APPEALS··········ATTACHED

## INDEX OF AUTHORITIES

CASE                                                                    PAGE(S)

HARRISON V. UNITED STATES, 392 U.S. 219 (1968)··················5

HOWARD V. STATE, 137 S.W.3D 281 (TEX.CRIM.APP. 2006)···········10

HUNTER V. STATE, 896 S.W.2D 397 (TEX.CRIM.APP. 1992)···········11

JACKSON V. DENNO, 378 U.S. 368 (1964)·························6

JACKSON V. VIRGINA, 443 U.S. 307 (1979)·······················9

MICHIGAN V. HARVEY, 494 U.S. 344 (1990)·······················6

MILES V. STATE, 918 S.W.2D 511 (TEX.CRIM.APP. 1996)············11

MIRANDA V. ARIZONA, 384 U.S. 436 (1969)···················3,5,6,7,8

MONTGOMERY V. STATE, 810 S.W.2D 372 (TEX.CRIM.APP. 1990)·······11

OLD CHIEF V. UNITED STATES, 519 U.S. 172 (1997)··············11-12

OWENS V. STATE, 827 S.W.2D 911 (TEX.CRIM.APP. 1992)············11

SMITH V. STATE, 779 S.W.2D 417 (TEX.CRIM.APP. 1989)············6

## STATUTES AND RULES

TEXAS CODE OF CRIMINAL PROCEDURE art. 18.02(1)·················4

TEXAS CODE OF CRIMINAL PROCEDURE art. 33.01···················9

TEXAS CODE OF CRIMINAL PROCEDURE art. 33.011··················9

TEXAS CODE OF CRIMINAL PROCEDURE art. 36.29···················9

TEXAS CODE OF CRIMINAL PROCEDURE art. 38.22 § 3(a)·············7

TEXAS CODE OF CRIMINAL PROCEDURE art. 38.22 § 3(c)·············8

TEXAS PROPERTY CODE TITLE 2 CHAPTER 5·························4

TEXAS RULES OF APPELLATE PROCEDURE, RULE 9.2(b)···············2

TEXAS RULES OF EVIDENCE, RULE 404(b)·························11

TEXAS RULES OF EVIDENCE, RULE 405···························11

TEXAS RULES OF EVIDENCE, RULE 609···························10

No. PD-0728-15

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

--------------------

JOSE DIAS PEREZ,
               Appellant/Petitioner

vs.

THE STATE OF TEXAS,
               Appellee/Respondent

--------------------

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

--------------------

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

Appellant/Petitioner, ("Petitioner" hereinafter) respect-
fully submits this Petition for Discretionary Review and moves
that this Honorable Court grant review of this cause and offers
the following in support thereof:

### STATEMENT REGARDING ORAL ARGUMENT

The Petitioner request oral argument in this case because
such argument may assist the Court in applying the facts to the
issues raised. It is suggested that oral argument may help
simplify the facts and clarify the issues.

### STATEMENT OF THE CASE

Petitioner was indicted on April 23, 2012, for the murder of
Martha Caselin Rameriz. (CR 6) The defense filed motions to
suppress evidence, (A personal writing of Petitioner) and
suppress statements given to law enforcement. (CR 32-43, 47-49;
88-93) The Trial Court denied the motions to suppress, and the

1

case proceeded to jury trial. (6 RR 156) During the trial and over objections, a personal writing and two statements made by Petitioner were introduced into evidence. Further, before a witness to an unadjudicated extraneous offense involving Petitioner of another shooting testified to events over thirty (30) years prior, a juror advised the Trial Court that she had personal knowledge of the witness, and that she would give greater credibility to that witness' testimony. (7 RR 2-21) The parties agreed to excuse the juror and proceed with eleven jurors. **Id.** The Trial Court did not excuse the juror. **Id.** Thereafter the jury found the Petitioner guilty of murder and assessed a 50 year sentence. (CR 174-75) Petitioner filed a Motion for New Trial, (CR 185-89) was denied by operation of law, and Notice of Appeal, (CR 184) the Trial Court certified Petitioner's Right of Appeal. (CR 172-73)

## STATEMENT OF PROCEDURAL HISTORY

In cause No. 18,373 the Petitioner was charged with the offense of Murder. The Petitioner was convicted of such offense on April 22, 2014, and appealed the conviction. On May 29, 2015, the Tyler Court of Appeals affirmed the conviction. No motions for rehearing were filed. On June 26, 2015, this Honorable Court granted an extension of time to file the Petition for Discretionary Review, up to and including August 28, 2015. On August 18, 2015, this Petition for Discretionary Review was timely forwarded to the Court of Criminal Appeals for filing pursuant to Rule 9.2(b), Texas Rules of Appellate Procedure.

2

## GROUNDS FOR REVIEW

### I.

Whether the Court of Appeals improperly held the Trial Court properly admitted into evidence a personal writing of the Petitioner which was seized upon the execution of an evidentiary search warrant?

### II.

Whether the Court of Appeals improperly held the Trial Court properly admitted into evidence a statement made by the Petitioner to Detective Battley while in custody following defective **Miranda** warnings?

### III.

Whether the Court of Appeals properly held the Trial Court properly admitted into evidence a statement made by the Petitioner to Jailor Creel while in custody without any **Miranda** warnings?

### IV.

Whether the Court of Appeals properly held the Trial Court did not err when it failed to excuse an admittedly bias juror after trial had commenced, and no agreement was made to dismiss juror between the State and Defense counsels?

### V.

Whether the Court of Appeal properly held evidence was sufficient after overruling Petitioner issues One, Two and Three?

### VI.

Whether the Court of Appeals properly held the Trial Court properly determined that an extraneous unadjudicated extraneous offense, over thirty (30) years old, was admissible, and in failing to grant a mistrial when unsolicited testimony of the extraneous offense was presented to the jury?

## ARGUMENT NUMBER ONE

The Court of Appeals glosses over the fact that the personal writings of the Petitioner were seized in violation of State and Federal Laws.

Texas Code of Criminal Procedure, ("Tex.C.C.P.") art.

3

18.02(1) specifically provides the basis of a search warrant, and what is permissible, and impermissible. Specifically, the "personal writings of the accused," **Id.** are prohibited.

The State introduced, over the objections of the Petitioner, and Trial Court allowed the introduction of what was clearly a personal writing into evidence at State's Exhibit ("SE") 73. (8 RR 36, SE - 73) This personal writing was written in the Petitioner's native language, (Spanish) and on a writing tablet. **Id.** The State was forced to translate the personal writing into English for the purpose of introducing the personal writing. **Id.** further, the writing was partially covered by items on a kitchen table. (4 RR 13)

The State argued that the handwritten note was a last will and testament. However, in order to make any disposition as such, the handwritten note must be deemed a legal document under the Texas Family Code, and title 2 Chapter 5 of the Texas Property Code. The note hardly conforms to a legal document, but at best a draft for personal use prior to the Petitioner returning to Mexico. (4 RR 36) The handwritten note can hardly be construed a legal disposition of Petitioners Property under the draconic requirements of Title 2 Chapter 5 of the Texas Property Code.

Therefore, the Court of Appeals holding that personal writing was admissible evidence is misplaced. The Court of Appeals holds impossibly, that since the personal writing was not allowed under Tex.C.C.P. art. 18.02, and as such the item wasn't listed on the warrant, the personal writing was admissible. (Slip Op. at 3) However, this is in direct conflict with the "Fruit of

the Poisonous Tree" doctrine of the Supreme Court of the United States. See, **Harrison v. United States**, 392 U.S. 219, 222 (1968)(For the "essence of a provision forbidding the acquisition of evidence in a certain way is not merely evidence so acquired before the Court, but that it shall not be used at all.")

Furthermore, the personal writing was not admissible under the "plain view" exception. A blanket policy covering "Poisonous Fruit" does not equate to a legal or Constitutional right for law enforcement to seize any item they desire during "the course of a good faith search conducted within the parameters of a valid search warrant." (Slip Op. at 3) This holding contrives a means to bypass law and effect it's own legal system. The warrant was issued to search for "weapons" and "blood" from the residence of the Petitioner. (SE - 1) The personal writing cannot by any means be construed as either, nor any other item contained within the search warrant.

Thus, the Court of Appeals has decided an important question of state and federal law in a way that conflicts with the decisions of the Court of Criminal Appeals, and the Supreme Court of the United State.

### ARGUMENT NUMBER TWO AND THREE

Both question Two and Three, revolve around the issue of statements and specifically, **Miranda v. Arizona**, 384 U.S. 436, 476-79 (1966) Therefore, the Petitioner shall cover both issues within one argument.

The Fourteenth Amendment's due process requires that only voluntary confessions be admitted into evidence; otherwise

5

reliable and probative evidence is inadmissible for all purposes if the evidence is derived from an involuntary statement. USCA Const. Amend. 14; **Michigan v. Harvey**, 494 U.S. 344 (1990) It is a violation of the due process clause of the state and federal constitution for a conviction, in whole or in part, on an involuntary statement. **Jackson v. Denno**, 378 U.S. 368 (1964); **Smith v. State**, 779 S.W.2d 417 (Tex.Crim.App. 1989)

The Court of Appeals "conclude[d] that * * * Appellant's statement was not taken in strict compliance with [Tex.C.C.P. art 38.22] Subsection 3(a),..." (Slip Op. at 5) However, the Court also held that "the State established an exception under Subsection 3(c). Therefore, the Trial Court did not err in admitting the statement." (Slip Op. at 5-6)

For the Court of Appeals to circumvent the protections afforded by the United States Constitution, and **Miranda**, Id. is unfounded in the jurisprudence of the United States. The protections against self-incrimination were secured for ages to come and designed to approach immortality as nearly as human institutions can approach it. **Miranda**, 384 U.S., at 442. The prosecution may not use statements whether exculpatory or inclupatory, stemming fro custodial interrogation of defendant unless it demonstrates use of procedural safeguards effect to secure privilege against self-incrimination. **Id.** 384 U.S., at 444. A defendant's constitutional right's have been violated if his conviction is based, in whole or in part, on involuntary confession, regardless of its truth or falsity, even if there is ample evidence aside from confession to support conviction. **Id.**

6

384 U.S., at 463-464. As far as voluntariness, the "voluntariness doctrine in state cases encompasses all interrogation practices which are likely to exert such pressure upon individual as to disable him from making free and rational choices. **Id.** 384 U.S., at 465.

As stated above, the Court of Appeals acknowledges that the Petitioner's statement was not taken in strict compliance with Tex.C.C.P. art 38.22 § 3(a). (Slip Op. at 5) This should have ended the consideration on the issue. However, the Court of Appeals held that the State somehow found a bypass on the Constitutionality of the involuntary statement. This directly contravenes the opinion of the Supreme Court of the United States in **Miranda**.

In relation to the statements of Jailer Creel; again the Court of Appeals bypasses the protections afforded by **Miranda**, through a series of procedural means. "Unless other fully effective means are devised to inform accused person of the right to silence, and to ensure continuous opportunity to exercise it, person **must**, before any questioning, be warned..." **Miranda**, 384 U.S., at 444. This would apply to the alleged statements made during booking procedures.

The Court of Appeals held: "The question 'Do you know why you're here?' does not require an incriminating response. A defendant could easily answer 'yes,''no,' or 'I was arrested for [a particular offense].'" (Slip Op. at 7) The Court further held: "Based on the totality of the circumstances, including both the content of the question and the circumstances in which it was

7

asked, we conclude that the question had a legitimate administrative purpose. See **Alford**, 358 U.S. at 661" **Id.** Any evidence that accused was threatened, "tricked or cojoled" into waiver will show that he did not voluntarily waive privilege to remain silent." **Miranda**, 384 U.S., at 476. Further, the privilege against self-incrimination protects individuals from being compelled to incriminate himself in **any manner**; it does not distinguish degrees of incrimination. **Id.** The Fifth Amendment provision that individual cannot be compelled to be witness against himself cannot be abridged in any circumstantial manner. **Id.** 384 U.S., at 477. Lastly, "[w]here rights secured by Constitution are involved there can be no rule making or legislation which would abrogate them." **Id.** 384 U.S., at 490.

Therefore, the Court of Appeals has misconstrued Tex.C.C.P. art. 38.22 § 3(c), has determined an important question of state and federal law in a way that conflicts with the applicable decisions of the Supreme Court of the United States.

## ARGUMENT NUMBER FOUR

During the guilt-innocence phase of the trial, and before the State called Witness Ward to describe an extraneous offense involving Petitioner, a seated juror, Geraldine Griffin, advised the parties and the Trial Court that the Juror knew witness Ward, had worked with her for some 5 years in a subordinate capacity, and would give greater weight to Witness Ward's testimony than she would other witness. The Juror believed Witness Ward was truthful and was credible. (12 RR 2-21)

The Petitioner argued that the defense had requested Juror

8

Griffin, be excused, and the trial continue with eleven jurors pursuant to Tex.C.C.P. arts. 33.01, 33.011, & 36.29.

The State contentions were directly in opposite, the State stated there was no agreement to excuse the juror, and the Court did not abuse it's discretion.

In the Court of Appeals opinion, the Court found: "The State expressed that it would not object to proceeding with eleven jurors is Appellant wished to agree to dismiss the juror." (Slip Op. at 10) However, the Court of Appeals erred in finding: "Appellant expressed no desire to dismiss the juror, and the trial continued." **Id.** When in fact, the Trial Court held it would not excuse the juror, and overruled any objections to the contrary. (12 RR 21)

Thus, the Court of Appeals has misconstrued the cited statutes, rule, regulation, or ordinance, and so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of the Court of Criminal Appeal's power of supervision.

### ARGUMENT NUMBER FIVE

This Ground of error is dependent upon the review of Grounds One, Two and Three. Therefore, the Petitioner incorporates by reference herein Grounds One, Two, and Three.

Minus benefit of the personal writing of the Petitioner, and the Statements of the Petitioner to Detective Battley, and Jailor Creel, there simply is no evidence to support the conviction for murder in the instant case.

Under **Jackson v. Virgina**, 443 U.S. 307, 319 (1979) The legal

9

sufficiency evidence of evidence is viewed in light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. However, in the instant case, the Petitioner contends that the requirement is in a "neutral" light considering all guilt-innocence evidence leads to proof to establish the Petitioner acted in any way other than by accident or in self defense in shooting Rameriz. See, **Howard v. State**, 137 S.W.3d 281 (Tex.Crim.App. 2006, writ ref'd, n.r.e.)

If the record is reviewed without consideration Detective Battley's interrogation, and book-in interrogation of jailor Creel, and inadmissible personal writings, the evidence is legally insufficient to support a conviction for Murder. Further, as a natural out-flow, of the evidence being legally insufficient, would lead to a conclusion that the evidence was factually insufficient to support the instant conviction.

## ARGUMENT NUMBER SIX

The Court of Appeals has directly circumvented the protections against extraneous evidence, in relation to propensity evidence, and proximity in time to the crime, by the holding that the trial Court did not abuse it's discretion by admitting said evidence over the objections of the defense, and in limine order of the Court.

Pursuant to Rule 609 of the Texas Rules of Evidence, ("Tex.R.Evid") "Evidence of a conviction under this rule is not admissible is a period of more than ten years has elasped since the date of conviction..." The Petitioner cites this provision to

10

demonstrate the absurdity of the Court of Appeals holding that a thirty (30) year old, non-prosecuted, alleged attempted murder would be admissible under Texas Rules of Evidence 404(b) and 405.

The Court of Appeals goes into a long dialog of case citations to support it's contentions on the instant issue. (Slip Op. at 8-10) However, in the end they must all fail. Quite plainly extraneous evidence of an alleged crime over thirty (30) years in age would be inadmissible to demonstrate the Petitioner in some way acted in conformity with his own character.

Unadjudicated extraneous offenses have long been held to be inadmissible. **Hunter v. State**, 896 S.W.2d 397 (Tex.Crim.App. 1992); See also, **Miles v. State**, 918 S.W.2d 511 (Tex.Crim.App. 1996) This is especially true if the unadjudicated offense "evidence admitted implicated defendant in offenses very similar in detail to charged offense. Tex.C.C.P. art. 37.07 § 3(a)." **Hunter**, 896 S.W.2d, at 399 Furthermore, "even assuming the evidence was sufficient to establish appellant's 'system' of criminal activity, we find that such evidence was not relevant to any material fact in dispute." **Owens v. State**, 827 S.W.2d 911, 916 (Tex.Cr.App. 1992) In fact, if extraneous evidence is not relevant apart from supporting inference of character conformity, it is absolutely inadmissible under rules of Evidence 404(b). See, **Montgomery v. State**, 810 S.W.2d 372, 387 (Tex.Crim.App. 1990)

The Supreme Court of the United States has further held: "Although propensity evidence is relevant, risk that jury will convict from crimes other than those charged or that, uncertain

11

of guilt, it will convict anyway because a bad person deserves punishment creates prejudicial effect that outweighs ordinary relevance." **Old Chief v. United States**, 519 U.S. 172, 117 S.Ct. 644, 650 (1997)

Therefore, the Court of Appeals decision is in direct conflict with the prevailing norms, and so far departed from the accepted and usual course of judicial proceedings, as to call for an exercise of the Court of Criminal Appeal's power of supervision, and decided an important question of state and federal law in such a way that conflicts with the applicable decisions of this Honorable Court and the Supreme Court of the United States, through the misconstruing the applicable statute, and rules applicable in the instant case.

## PRAYER FOR RELIEF

For the reasons stated above, it is respectfully submitted that the Court of Criminal Appeals of Texas should grant the Petition for Discretionary Review.

**Respectfully submitted,**

Jose Dias Perez
TDCJ-ID # 1951217
Eastham State Farm
2665 Prison Road # 1
Lovelady, Texas 75851

12

## CERTIFICATE OF SERVICE

The Petitioner certifies that a true and correct copy of the foregoing Petition for Discretionary Review has been mailed to the office of Rachel L. Patton, District Attorney for Cherokee County, Texas, West 6th Street, Rusk, Texas 75785, and via U.S. Mail, first-class postage pre-paid, to the Office of the State Prosecuting Attorney, P.O. Box 12405, Capitol Station, Austin, Texas 78711, on this the 18th day of August, 2015.

Jose Dias Perez
TDCJ-ID # 1951217

13

APPENDIX - A

OPINION OF THE TWELFTH COURT OF APPEALS AT TYLER, TEXAS

APPEAL NO. 12-14-00116-CR

JOSE DIAS PEREZ vs THE STATE OF TEXAS

## NO. 12-14-00116-CR

## IN THE COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT

## TYLER, TEXAS

| | | |
|---|---|---|
| *JOSE DIAS PEREZ,*<br>*APPELLANT* | § | *APPEAL FROM THE 2ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Jose Dias Perez appeals his conviction for murder, for which he was sentenced to imprisonment for fifty years. Appellant raises six issues challenging the trial court's admission of certain evidence, its failure to excuse a juror from service, and the sufficiency of the evidence. We affirm.

### BACKGROUND

Appellant was charged by indictment with murder. He pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the evidence showed that Appellant had known the victim, Martha Caselin Ramirez, for about fifteen years. The two dated for about eight months and lived together for a few months prior to the offense. About two weeks prior to the offense, Ramirez moved out of Appellant's house. One night, Appellant came to Ramirez's home. He remained in his pickup while Ramirez's son went to get her. Ramirez got into Appellant's pickup with him and they talked. At some point, Appellant retrieved a .9 millimeter handgun from inside the vehicle and fired three shots, two of which hit and fatally wounded Ramirez. Appellant drove across town to his land with Ramirez's body still in the vehicle. Shortly thereafter, he called 911 and reported the incident.

Ultimately, the jury found Appellant "guilty" of murder and assessed his punishment at imprisonment for fifty years. This appeal followed.

**ADMISSIBILITY OF EVIDENCE**

In his first, second, and third issues, and part of his sixth issue, Appellant complains about the admissibility of a handwritten note, his statements to a detective and a jailer, and extraneous offense evidence.

## Standard of Review and Applicable Law

Generally, we review a trial court's decision to admit evidence under an abuse of discretion standard. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We will not reverse a trial court's ruling admitting evidence unless that ruling falls outside the zone of reasonable disagreement. *See Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

## Appellant's Handwritten Note

After Appellant's arrest, a search warrant was issued for officers to search for certain items at his home, including firearms, ammunition, firearm magazines, firearm cleaning kits, items with possible blood evidence on them, and items belonging to Ramirez. While searching for these items, officers saw a notepad on the kitchen table. The notepad was opened to a note written in Spanish and apparently signed by Appellant. A Spanish speaking officer was called to the scene to translate the note. The translation reads, "Ok I want to make a testament. I leave everything to my daughters. They deserve my house, my land, and everything I have. Now I'm leaving, but I'm taking someone with me. Signed Jose Perez." The officers decided that the note appeared to be related to the offense they were investigating and seized it as evidence.

At a pretrial suppression hearing, Appellant argued that the note was inadmissible because it was not and could not have been included in a valid search warrant. Appellant contended that the note was a "personal writing" within the meaning of Article 18.02(10) of the code of criminal procedure. This provision reads, "A search warrant may be issued to search for and seize . . . property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person

2

committed an offense." *See* TEX. CODE CRIM. PROC. ANN. art. 18.02(10) (West Supp. 2014). The State argued that the note was not a personal writing within the meaning of Article 18.02(10). The State further contended that the note was admissible even though it was not listed in the search warrant because it was found in plain view. The trial court denied the motion to suppress. At trial, Appellant renewed his objection when the note was offered as evidence, and the trial court overruled the objection.

In his first issue, Appellant reasserts his position that the note was a personal writing within the meaning of Article 18.02(10). The State argues that regardless of whether the note is a personal writing, Article 18.02(10) does not apply. We agree. Article 18.02 governs the items for which a search warrant may be issued. Here, the search warrant was not issued for Appellant's note. Therefore, Article 18.02(10) does not apply. *See Reeves v. State*, 969 S.W.2d 471, 486 (Tex. App.—Waco 1998, pet. ref'd).

Appellant further argues that the note was not admissible under the plain view exception to the search warrant requirement because the officers could not have entered the home had it not been for the issuance of the search warrant. However, in the course of a good faith search conducted within the parameters of a search warrant, an officer may sometimes seize objects that are not particularly described in the search warrant. *Bower v. State*, 769 S.W.2d 887, 906 (Tex. Crim. App. 1989); *see also Reeves*, 969 S.W.2d at 486. An officer may seize such objects if he has a reasonable basis at the time of the seizure for drawing a connection between the objects and the offense that furnished the basis for the search warrant. *Id.*

Here, there is no dispute that the note was discovered and seized in the course of a good faith search conducted within the parameters of a valid search warrant. *See id.* Furthermore, the officers had a reasonable basis at the time of the seizure for drawing a connection between the note and the murder. *See id.* We conclude that the trial court did not abuse its discretion by admitting the note into evidence. *See id.* Accordingly, we overrule Appellant's first issue.

**Appellant's Statement to Detective Battley**

After Appellant called 911, he told the 911 operator that he would meet the police at his house. When Appellant arrived at his house, police officers handcuffed him and read him his rights. The reading of his rights was captured by the recording equipment of one of the police vehicles. Appellant then led the officers to Ramirez's body. At the scene, Detective Gina Battley interviewed Appellant. Before questioning Appellant, Detective Battley asked if he had

been read his rights and understood them, and he said that he did. Appellant told Detective Battley that he had gone to Ramirez's home that night to talk. He stated that Ramirez was upset because he had been drinking. Ramirez went inside the house and came back to his pickup with something in her hand. He thought it was a weapon, so he took his gun and fired three times at her. He believed that two of the shots hit Ramirez.

In his second issue, Appellant argues that his statement to Detective Battley is inadmissible because it was involuntarily given. He contends that the statement was involuntary because he was intoxicated and in pain from the handcuffs when he waived his rights and gave the statement. Evidence as to both of these factors was presented during a pretrial hearing on Appellant's motion to suppress the statement.

The determination of whether a confession is voluntary must be based on an examination of the totality of the circumstances surrounding its acquisition. *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985). Relevant circumstances to determine if a defendant's will has been overborne include length of detention, incommunicado or prolonged interrogation, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family, and physical brutality. *Id.*

Intoxication, while relevant to the issue, does not automatically render a confession involuntary. *Nichols v. State*, 754 S.W.2d 185, 190 (Tex. Crim. App. 1988). The central question is the extent to which the person was deprived of his faculties due to the intoxication. *Id.* If the person's intoxication rendered him incapable of making an independent, informed choice of free will, then his confession was given involuntarily. *Id.*

A recording of the interview was played at the suppression hearing. At the beginning of the recording, Appellant asked for his handcuffs to be loosened. Within a very short time, Detective Battley had another officer loosen Appellant's handcuffs. Detective Battley testified that during her interview of Appellant, he smelled like alcohol, had somewhat slurred speech, and told her that he had been drinking. She believed Appellant was "somewhat intoxicated" but was able to communicate. Nothing in the recording or the testimony indicates that Appellant's will was overborne. Based on the totality of the circumstances, we conclude that the trial court did not abuse its discretion by finding that Appellant's statement was voluntarily given.

4

Appellant further argues that his statement to Detective Battley is inadmissible under Article 38.22, Subsections 3(a)(2) and 3(a)(4) of the code of criminal procedure. These subsections read as follows:

   (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

     . . . .

   (2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

     . . . .

   (4) [and] all voices on the recording are identified.

TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a)(2), (a)(4) (West Supp. 2014).

The State argues that even though the statement was not obtained in full compliance with Subsection 3(a), it is nonetheless admissible under Subsection 3(c) of the same article. That subsection reads as follows:

Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a)(c) (West Supp. 2014). Under the exception set out in Subsection 3(c), oral statements asserting facts or circumstances establishing the guilt of the accused are admissible if, at the time they were made, they contained assertions unknown by law enforcement but later corroborated. *Woods v. State*, 152 S.W.3d 105, 117 (Tex. Crim. App. 2004). Such oral statements need only circumstantially demonstrate the defendant's guilt. *Id.* If even a single assertion of fact in such an oral statement is found to be true and conducive to establishing the defendant's guilt, then the statement is admissible in its entirety. *Id.*

Here, Detective Battley testified that Appellant's assertions during the interview that the shooting occurred inside his pickup, that it occurred at Ramirez's residence, that Ramirez was in the passenger seat at the time it occurred, and that Appellant fired the gun three times and hit Ramirez twice were unknown at the time of the interview. Detective Battley further testified that all of these assertions were later determined to be true. We conclude that although Appellant's statement was not taken in strict compliance with Subsection 3(a), the State established an

5

exception under Subsection 3(c). Therefore, the trial court did not err in admitting the statement. Accordingly, we overrule Appellant's second issue.

## Appellant's Statement to Jailer

When Appellant was booked into jail for Ramirez's murder, the jailer who booked him in asked him the questions that she was trained to ask, including, "Do you know why you're here and where you're at?" The jailer testified that the purpose of those questions is to determine whether the person is too intoxicated or otherwise unable to complete the booking process. When the jailer asked Appellant, "Do you know why you're here," he responded that he had killed his girlfriend because she was performing witchcraft on him. He continued talking, unprovoked, and stated that his girlfriend shot at him and he shot her twice. The jailer proceeded to ask the rest of the normal booking questions.

In his third issue, Appellant argues that his statements to the jailer are inadmissible because they are products of a custodial interrogation without the provision of *Miranda*[1] warnings. "Interrogation" refers to (1) express questioning and (2) any words or actions of the police, other than those normally attendant to arrest and custody, that police should know are reasonably likely to elicit an incriminating response from the suspect. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)). Routine booking questions, because they are "normally attendant to arrest and custody," are a recognized exception to *Miranda*. *Alford*, 358 S.W.3d at 654. To fall within the exception's parameters, a routine booking question must be reasonably related to a legitimate administrative concern. *Id.* at 659-60. Questions such as a defendant's name, address, height, weight, eye color, date of birth, age, place of employment, and physical disabilities have been accepted as falling within the exception's parameters. *Id.* at 654-55. Questions such as where the defendant was going when he was pulled over, when and what he had last eaten, and whether he had consumed alcohol have not. *Id.* at 655.

A trial court must examine whether, under the totality of the circumstances, a question is reasonably related to a legitimate administrative concern. *Id.* at 661. Whether a question reasonably relates to an administrative concern must be ascertained by both the content of the question and the circumstances in which the question is asked. *State v. Cruz*, No. PD-0082-14, 2015 WL 2236982, at *7 (Tex. Crim. App. May 13, 2015). An appellate court generally reviews

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

de novo the objective reasonableness of a question's stated administrative purpose, but defers to the trial court's resolution of disputed facts. *Alford*, 358 S.W.3d at 661.

The jailer in this case testified that she routinely asked prisoners at the beginning of the booking process whether they knew where they were and why they were there. She stated that the purpose of these questions was to make sure the prisoners knew why they were there and were not too intoxicated to continue the booking process. The jailer testified that when she was booking Appellant, she first asked his name and then whether he knew why he was there. She was particularly interested in Appellant's answer to the latter question because she smelled alcohol on him. After Appellant answered the question, the jailer finished booking him and returned him to his cell. The jailer testified that she had no intent to elicit incriminating information when she asked the question.

Just as the government has a legitimate administrative interest in asking a defendant questions such as his name, address, and physical disabilities, it also has an interest in determining whether the defendant is competent to answer such questions before asking them. The question "Do you know why you're here?" does not require an incriminating response. A defendant could easily answer "yes," "no," or "I was arrested for [a particular offense]." Based on the totality of the circumstances, including both the content of the question and the circumstances in which it was asked, we conclude that the question had a legitimate administrative purpose. *See Alford*, 358 S.W.3d at 661; *Cruz*, 2015 WL 2236982, at *7. Therefore, the trial court did not err in admitting Appellant's statements under the booking question exception to *Miranda*. Accordingly, we overrule Appellant's third issue.

## Extraneous Offense Evidence

In Appellant's case in chief, he took the stand and testified that the shooting of Ramirez was accidental. In the State's rebuttal case, it offered evidence of an extraneous offense to rebut Appellant's claim that Ramirez's shooting was accidental. In January 1986, Appellant was married to Barbara Ward. The two had been separated for approximately two months, and Ward was living with her parents. Appellant went to the house one night and remained in the car. A family member told Ward that Appellant was there and wanted to talk. Ward went outside and leaned into the car window to talk to Appellant. At one point, she turned her head to look at something and Appellant shot her in the face. Ward looked back at Appellant and he shot her two more times in the arm and shoulder. She ran as far as she could before falling. After firing

7

six shots, Appellant drove away. Ward survived the wounds and later filed an affidavit of nonprosecution. The charges against Appellant were dismissed.

As part of his sixth issue, Appellant argues that the trial court erred by admitting the extraneous offense evidence because it lacked the required similarities and was too remote in time to be admissible under Rule 404(b). Generally, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *See* TEX. R. EVID. 404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See id.*

When a defendant claims his act was free from criminal intent, extraneous offenses may be relevant to prove such intent. *Plante v. State*, 692 S.W.2d 487, 491-92 (Tex. Crim. App. 1985). To be admissible to negate the possibility of accident, the extraneous offense must be sufficiently similar in nature to the charged offense that the inference of improbability of accident logically comes into play. *Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987). The degree of similarity required in cases where intent is the material issue is not, however, as great as in cases where identity is the material issue and extraneous offenses are offered to prove modus operandi. *Id.*

In this case, the mode of committing the offenses and the circumstances surrounding the offenses are sufficiently similar for the extraneous offense to be relevant to intent. The primary and extraneous offenses were similar in that (1) the victims were women who had been in relationships with Appellant; (2) both victims had recently left Appellant; (3) Appellant arrived at the victims' homes at night, remained in his vehicle, and asked family members to go and get the victims; (4) Appellant asked both victims to come back to him; (5) Appellant shot both victims multiple times with a handgun; and (6) Appellant claimed that both shootings were accidental. We conclude that Ward's shooting is sufficiently similar in nature to Ramirez's shooting that the inference of improbability of accident logically comes into play. Therefore, the evidence of Ward's shooting was admissible to negate the possibility that Ramirez's shooting was an accident. *See id.*

At trial, Appellant argued that admitting evidence of the extraneous offense would result in unfair prejudice because the offense was so old that he could not adequately defend against it. However, after a hearing outside the presence of the jury in which the trial court heard the

8

testimony of both Ward and Appellant regarding the extraneous offense, the trial court found that the jury could find beyond a reasonable doubt that it occurred. Furthermore, there is no per se rule as to when an extraneous offense is too remote in time to be introduced in evidence. *Templin v. State*, 711 S.W.2d 30, 34 (Tex. Crim. App. 1986); *Corley v. State*, 987 S.W.2d 615, 620 (Tex. App.—Austin 1999, no pet.). The factors of remoteness and similarity are important, not in and of themselves, but only as they bear on the relevancy and probative value of the extraneous offense. *Plante*, 692 S.W.2d at 491. The period of time separating the extraneous offense from the primary offense is a factor to be considered, along with all other relevant factors. *Templin*, 711 S.W.2d at 34. Based on the facts of this case and the extraneous offense, we conclude that the extraneous offense is not so remote in time as to make it inadmissible to show intent in this case.

Finally, Appellant claims that the trial court erred by admitting the extraneous offense evidence over his Rule 403 objection. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Rule 403 favors admissibility, and the presumption is that relevant evidence will be more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991). A proper Rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Although extraneous offenses always possess the potential to impress the jury of a defendant's character conformity, any impermissible inference of character conformity can be minimized through a limiting instruction. *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996).

Keeping in mind the above standards, we examine whether the trial court abused its discretion in admitting the extraneous offense evidence. First, the evidence of Ward's shooting made Appellant's intent to kill Ramirez more probable and rebutted Appellant's theory that her shooting was accidental. Second, the trial court gave a limiting instruction in the jury charge, which served to minimize any impermissible inference of character conformity. *See id.* Third, the prosecutor used a minimal amount of time to develop evidence of the extraneous offense. Finally, although there was other evidence that might have established beyond a reasonable doubt Appellant's intent to commit murder—including Appellant's handwritten will and the

evidence of multiple gunshots—we cannot say that the State did not need the extraneous offense evidence to prove his intent to the jury beyond a reasonable doubt. Under these circumstances, we cannot conclude that the trial court abused its discretion in admitting the extraneous offense evidence.

Accordingly, we overrule Appellant's sixth issue as it relates to the admission of the extraneous offense evidence.

## FAILURE TO EXCUSE JUROR

In Appellant's fourth issue, he complains that the trial court erred by failing to excuse a juror who knew one of the witnesses.

When Barbara Ward took the stand during the State's rebuttal, a juror indicated that she needed to speak with the judge. Outside the presence of the other jurors, the juror told the trial court that fourteen years prior to that time, she had worked with Ward for five years. She stated that they had not associated outside of work, and that she was not familiar with any details of Ward's marriage relationships. The juror said that she believed Ward was a trustworthy person, but that she could nonetheless be fair and impartial and weigh Ward's testimony like that of any other witness.

Appellant made an objection to Ward's testimony and moved for a mistrial on the basis that he could not receive a fair trial because of the juror's relationship with Ward. The trial court overruled the objection and denied the motion for mistrial. The State expressed that it would not object to proceeding with eleven jurors if Appellant wished to agree to dismiss the juror. Appellant expressed no desire to dismiss the juror, and the trial resumed.

On appeal, Appellant does not argue that the juror was disqualified, but that the trial court erred by failing to excuse her based on the parties' agreement to proceed with eleven jurors as permitted by Article 36.29 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 36.29(c) (West Supp. 2014). However, the record shows that although the State voiced it would not object to dismissing the juror, there was no such agreement of the parties. Accordingly, we overrule Appellant's fourth issue.

10

## EVIDENTIARY SUFFICIENCY

In Appellant's fifth issue, he argues that without his handwritten note and his statements to law enforcement, the evidence in this case would be legally and factually insufficient to support his conviction. We have previously concluded that the handwritten note and the statements to law enforcement were admissible. Therefore, we overrule Appellant's fifth issue.

## DENIAL OF MOTION FOR MISTRIAL

In part of his sixth issue, Appellant complains that the trial court erred by denying his motion for mistrial after a witness for the State mentioned the extraneous offense during cross examination.

### Standard of Review and Applicable Law

A trial court's denial of a mistrial is reviewed under an abuse of discretion standard, and its ruling must be upheld if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). Generally, it is presumed that the jury can and will follow a court's curative instruction to disregard objectionable testimony. *See Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). Mistrial is an extreme and exceedingly uncommon remedy that is appropriate only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Id.* Whether a particular error calls for a mistrial depends on the peculiar facts and circumstances of the case. *Hernandez v. State*, 805 S.W.2d 409, 413 (Tex. Crim. App. 1990).

### Analysis

During defense counsel's cross examination of a detective who was involved in the case, the following exchange took place:

> DEFENSE COUNSEL: Do you ever recall another investigator in another report saying that *We went to talk to Jose Perez's daughter, who saw him, you know, three hours before the shooting*?
>
> DETECTIVE: I don't recall that, no.
>
> DEFENSE COUNSEL: Okay. Or *Jose Perez's first wife Dolores, who saw Jose three hours before the shooting*? Do you remember that at all in the investigation?
>
> DETECTIVE: That would be someone else's testimony. I don't know.
>
> DEFENSE COUNSEL: But you didn't see that in any reports that you –

11

DETECTIVE: I don't recall that I did. I remember that there was—there was talk of a prior incident. And the first information we had is that he had actually killed his first wife, but we found out that she had actually lived.

Defense counsel objected, asked that the testimony be stricken, and moved for a mistrial. The trial court denied the motion for mistrial but instructed the jury to disregard the testimony.

An inadvertent reference by a witness to an extraneous offense is generally cured by a prompt instruction to disregard. *See Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992). Here, the detective was apparently unaware that the "first wife" defense counsel was referring to was not the same ex-wife Appellant had shot. The trial court gave an instruction to disregard. Furthermore, evidence regarding the extraneous offense was presented in the State's rebuttal case, and we have held that the evidence was admissible. We conclude that the trial court did not abuse its discretion by denying the motion for mistrial. Accordingly, we overrule Appellant's sixth issue as it relates to the denial of his motion for mistrial.

## DISPOSITION

Having overruled Appellant's first, second, third, fourth, fifth, and sixth issues, we *affirm* the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered May 29, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

12